JaLOTTINGER, Chief Judge.
From a judgment overruling the peremptory exception raising the objection of prescription, defendant applied to this court for supervisory writs. In Alfred Leroy Caillet, et al. v. Bouwe Dykstra, et al., No. 94 CW 2571, this court on April 24, 1995, denied the application for writs. The defendant then applied to the Louisiana Supreme Court for writs. On June 30, 1995, in Alfred Leroy Caillet, et al. v. Bouwe Dykstra, et al., No. 95-CC-1213 La. 6/30/95, 657 So.2d 1006, the supreme court granted the writ application and “remanded to [this court] for briefing, argument and opinion.”
FACTS
This suit arises out of an industrial accident that occurred on December 21, 1956. On that date, plaintiffs’ father, the late Leroy Joseph Caillet, and three co-workers were killed by an explosion at their place of employment. At the time of his death, Mr. Caillet was employed at an oil production facility owned by Shell Oil Company (hereinafter “Shell”) and located in the Bayou Sorrel oil field in Iberville Parish. Leroy Joseph Caillet was survived by his widow and three minor children.
Two of the Caillet children testified that in the weeks following the accident, several unknown Shell representatives called upon the family and allegedly advised them that the fatal explosion had been caused when Mr. Caillet cut through a pipe. The children further recalled that their mother inquired as to whether the family could file suit against Shell, and was advised that because Mr. Cail-let had been responsible for the accident, the family could not file suit. The Shell representatives assured Mrs. Caillet that even though her husband’s body had never been recovered, she would not have to wait seven years to receive his social security benefits.
Several months later, Mrs. Caillet and other widows received letters from Shell dated April 19, 1957, which were signed by Bouwe Dykstra, a Shell vice-president. In the letters, Mr. Dykstra, on behalf of Shell, extended the company’s condolences to the widows for the loss of their husbands, and further noted that this was a disaster to the entire community as ten minor children had experienced the loss of a parent. Mr. Dykstra went on to state that “[although Shell has provided considerably more than the mere . legal requirements, we know that higher educational opportunities for these children will now be more difficult than before.” The lettersjgconcluded by presenting, on Shell’s behalf, one thousand dollar maturity value savings bonds payable to each of the minor children as a start on a college education.
Mrs. Caillet died in 1986. Her three children, now majors, subsequently learned that they might have an action against Shell for the recovery of unpaid workers’ compensation benefits despite the family’s long-standing belief that the accident had resulted from Mr. Caillet’s negligence. An attorney retained by the children in 1989 or 1990[1] advised that because their father had caused the explosion, they had no cause of action against Shell other than for the recovery of unpaid compensation. In settling the compensation claim, Shell further sought a blanket waiver of all future claims and liabilities.
At this point, the Caillet children became suspicious that they might have other claims against Shell. Shell officials contended that any records in their possession had long since been destroyed. In February of 1993, the children were able to locate and speak *385 with several survivors of the explosion that had killed their father. These men allegedly advised them that their father had not caused the accident as Shed’s representatives had related at the time, and in fact, had nothing to do with the explosion.
Through another attorney, the Caillet children (hereinafter “plaintiffs”) instituted the present action for wrongful death on September 1, 1993. Based upon the allegations set forth in their petition, plaintiffs’ allege that Bouwe Dykstra (hereinafter “Dykstra”) and other named defendants[2], while serving as executive officers of Shell, committed acts of fraud and misrepresentation, that deprived them and their uneducated mother[3] from asserting a timely action for wrongful death. Specifically, plaintiffs point to Dykstra’s assertion in his April 19, 1957 letter to the family wherein he claims that Shell had “provided considerably more than the pmere legal requirements.” Plaintiffs further allege that the doctrine of contra non valentem should be applied to suspend the running of prescription.
ACTION OF THE TRIAL COURT
A peremptory exception raising issues of prescription was subsequently filed on behalf of Dykstra’s estate.[4] Following a hearing on the exception, the trial judge took the matter under advisement and thereafter denied the exception. Dykstra’s estate thereafter applied for a writ from this court and upon its denial, sought review of this ruling by the Louisiana Supreme Court. The supreme court granted the writ application and remanded the matter for disposition by this court.
ASSIGNMENT OF ERRORS In his brief to this court, Kelleher, as executor of Dykstra’s estate, alleges the following assignments of error:
(1) Did the relevant and admissible evidence support the trial court’s judgment overruling the exception of prescription filed on behalf of the Estate of Bouwe Dykstra?
(2) Did the trial court misapply the doctrine of contra non valentem?
DISCUSSION
The present action was filed on September 1, 1993, and sets forth plaintiffs’ claims for recovery as a result of their father’s wrongful death on December 21, 1956. As a general rule, wrongful death actions are subject to a liberative prescription of one year from the date of the decedent’s death. La.Civ.Code arts. 2315.2, 3492. This prescriptive period runs against all persons, including minors, unless an exception is established by legislation. La.Civ.Code arts. 3467, 3468. Ordinarily, it is the exceptor’s burden to show that the action is barred by prescription. Langlinais v. Guillotte, 407 So.2d 1215, 1216 (La.1981). However, when the petition shows on its face that the prescriptive period has run, as in the instant case, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period. Bouterie v. Crane, 616 So.2d 657, 660 (La.1993); Lima v. Schmidt, 595 So.2d 624, 628 (La.1992).
J5T0 soften the occasional harshness of prescriptive statutes, our courts have recognized a jurisprudential exception to prescription: contra non valentem non currit praescriptio, which means that prescription does not run against a person who could not bring his suit[5]. Id., at 629. In the instant *386 ease, plaintiffs assert and the trial court found that contra non valentón operated to suspend the commencement of prescription until February of 1993 when plaintiffs discovered information indicating that the explosion did not result from the actions of Mr. Caillet.
In his written reasons for judgment, the trial judge noted:
In the instant case plaintiff has shown that they [sic] and their mother (who is now deceased) relied almost completely on the honesty and forthrightness of Mr. Dykstra and other Shell representatives. At the time of the accident the Caillet’s were minors and their mother was a poorly educated women [sic] who was not from the area. The Caillet children all have vivid memories of visits from Shell representatives, including Mr. Dykstra, at which the Caillet family was told that their father had caused the accident, no remains of his body had been found, that they were not entitled to bring suit against Shell, and in fact, that Shell had gone beyond their [sic] legal requirements in their [sic] treatment of the Caillet family. This same evidence, introduced through the testimony of surviving Caillet children was supported by a letter from Mr. Dykstra to Mrs. Caillet dated April 19,1957.
Testimony revealed that Mrs. Caillet was too afraid of losing her social security benefits to ever question Shell’s actions following her husband’s death.
Based upon the allegations contained in their petition and the evidence presented at the hearing on this exception, plaintiffs contend that Dykstra, while acting in the course and scope of his employment as an executive officer of Shell, deprived plaintiffs and their mother of workers’ compensation and wrongful death benefits resulting from the death of their father. In their responses to interrogatories, plaintiffs concede that neither they, nor their witnesses, heard Dykstra make any of the statements which they claim deprived the family from asserting a timely cause of action. The record before us is devoid of any evidence to suggest that Dykstra ever went to the Caillet home, or had any contact with the plaintiffs or their mother other than his | (¡letter of April 19, 1957. The trial judge’s statement to the contrary in his written reasons for judgment is unsupported by the evidence.
Plaintiffs’ claim against Dykstra is based entirely upon his assertion in said correspondence that “Shell has provided more than the mere legal requirements.” Plaintiffs argue that such a statement was fraudulent and induced the family’s inaction for over thirty-two years. Even if we were to assume ar-guendo, that such a statement was sufficient to invoke the doctrine of contra non valen-iem[6], plaintiffs knew, when they instituted suit against Shell in 1989 or 1990[7], that the statement contained in Dykstra’s 1957 correspondence was incorrect. Nevertheless, plaintiffs waited until September of 1993 to file the present wrongful death action against Dykstra and others. Plaintiffs failed to establish that contra non valentem operated to suspend any claims they might have against Dykstra’s estate until September 1993; therefore, plaintiffs’ claims against Dykstra’s estate are barred by liberative prescription. Thus we conclude the trial court erred in overruling the exception raising the objection of prescription.
CONCLUSION
For the foregoing reasons, the judgment of the trial court overruling the peremptory exception raising the objection of prescription is reversed, and the exception raising *387 the objection is now maintained and the suit against the estate of Bouwe Dykstra is dismissed with prejudice. This matter is hereby remanded to the district court for further proceedings consistent with this opinion. All costs of this appeal shall be assessed against plaintiffs.
REVERSED, RENDERED AND REMANDED.

. There is no evidence in the record to indicate the date that plaintiffs filed suit against Shell for workers’ compensation benefits; however, both parties apparently concede that suit was filed in either 1989 or 1990.

. Additional defendants who were not parties to this exception and therefore not presently before this court on appeal are the Succession of Byron Lee Johnson, field production supervisor at the Bayou Sorrel oil field; other unknown executive officers of Shell Oil Company; and the Travelers Insurance Company, alleged general liability insurer of Shell and its executive officers.

. At the hearing on this matter, Alfred L. Caillet, one of the plaintiffs herein, testified that his mother left school after completing the ninth grade.

. Defendant Bouwe Dykstra died on September 11, 1993, ten days after this matter was filed but prior to service of process. Harry B. Kelleher in his capacity as testamentary executor of the estate of Bouwe Dykstra has been substituted as a defendant in this matter.

. The Louisiana Supreme Court has recognized contra non valentem to he applicable where: (1) there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) there was some condition coupled with the contract or *386 connected with the proceedings which prevented the creditor from suing or acting; (3) the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. Corsey v. Louisiana Department of Corrections, 375 So.2d 1319, 1321-1322 (La. 1979).

. In Gover v. Bridges, 497 So.2d 1364, 1369 (La. 1986), the supreme court ruled that while statements contained in a physician’s letter to the daughter of his deceased patient were erroneous and self-serving, such statements did not reach the level of either fraud or breach of duty to disclose so as to prevent the daughter and her brother from asserting a timely suit for malpractice.

. See footnote 1.