700 So.2d 1279 (1997)
PARAGON DEVELOPMENT GROUP, INC.
v.
Malcolm J. SKEINS, Jr., Individually and as Administrator of the State of his minor son.
No. 96 CA 2125.
Court of Appeal of Louisiana, First Circuit.
September 19, 1997.
*1280 Marti Tessier, Mandeville, for Plaintiff-Appellant.
John M. Gallagher, Jr., New Orleans, for Defendant-Appellee.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
FOGG, Judge.
In this tort action, plaintiff seeks to recover damages resulting from a series of thefts committed by defendant's minor son. The issues presented are whether the trial court erred in sustaining defendant's peremptory exception of prescription and denying plaintiff's motion for new trial. For the reasons set forth below, the decision of the trial court is reversed and the case is remanded.
Plaintiff, Paragon Development Group, Inc. owns Putt-Putt Golf and Games (hereinafter "Putt-Putt") in Mandeville, Louisiana. At the time of these events, Paragon was principally operated by brothers, Eddie and Bryan Horridge. Construction of the Putt-Putt business began in March of 1994. In April, Paragon hired defendant, Malcolm J. Skeins, Jr., a subcontractor, to perform electrical work at the construction site. Defendant's minor son, Scott, was a member of his work crew.
In late June or early July, thefts began to occur at the job site. According to criminal reports filed by Paragon with the Mandeville Police Department on July 6 and July 12, 1994, several items necessary for completion of construction, including a pressure washer, airless sprayer and backpack blower, were stolen. Scott Skeins was eventually arrested for the thefts.
The stolen equipment was later recovered and returned to Paragon, but not before the company was forced to rent replacement machinery. In addition, plaintiff's petition alleges that, following the thefts, it had to hire security to patrol and protect the property and additional personnel to detail the equipment. Plaintiff also claims that, because defendant failed to complete the electrical work timely, it had to hire another electrician. It alleges that all of these events caused the business to open one month behind schedule, resulting in a loss of revenue.
Plaintiff claims it first learned the identity of the party responsible for the thefts in May of 1995, when it received a check in the amount of $100.00 from the District Attorney's office. The cover letter explained that the money was collected as restitution due Putt-Putt from Scott Skeins. Thereafter, on August 31, 1995, Paragon filed the instant suit against Mr. Skeins, individually and as administrator of the estate of his minor son, alleging that defendant was liable for damages resulting from Scott's criminal conduct. In response to the suit, defendant filed a peremptory exception claiming that plaintiff's *1281 claim was barred by the one-year liberative prescription applicable to delictual actions. Plaintiff challenged the exception on grounds that prescription was suspended under the doctrine of contra non valentem until May of 1995 when Paragon, by receipt of the restitution check, was made aware that Scott Skeins had committed the thefts.
The trial court determined that Paragon officials knew or had reason to know that Scott was the culprit soon after the crimes occurred. Accordingly, the court held the theory of contra non valentem did not apply and plaintiff's claim, filed more than one year after the cause of action arose, had prescribed. The trial court granted defendant's exception, dismissing plaintiff's tort action. Plaintiff filed a motion for new trial which was denied by the trial court and this appeal followed.
Initially, appellant asserts that the trial court erred in finding that its suit was untimely and upholding defendant's exception. It argues that pursuant to the equitable doctrine of contra non valentem, prescription should have been suspended until officials of Paragon knew with certainty that Scott Skeins was guilty of the thefts. Appellant claims that it was not privy to that knowledge until May of 1995 when the restitution check was received.
Delictual actions are subject to a liberative prescription of one year which commences to run from the date injury or damage is sustained. LSA-C.C. art. 3492. Prescription runs against all persons absent an exception established by legislation. LSA-C.C. art. 3467. This statute, like all prescription statutes, is strictly construed against prescription and in favor of maintaining the cause of action. Wimberly v. Gatch, 93-2361 (La.4/11/94); 635 So.2d 206; Bouterie v. Crane, 616 So.2d 657 (La.1993); Bustamento v. Tucker, 607 So.2d 532 (La.1992); Lima v. Schmidt, 595 So.2d 624 (La.1992); Foster v. Breaux, 263 La. 1112, 270 So.2d 526 (1972).
Louisiana courts have recognized the doctrine of "contra non valentem agere nulla currit praescriptio" as an exception to the general rules of prescription. It stands for the premise that prescription can not run against a person unable to bring an action. Contra non valentem is applicable under certain circumstances when the principles of justice and equity demand that prescription should be suspended because a plaintiff was unable to assert his rights for reasons external to his own will. Wimberly v. Gatch, 635 So.2d at 211.
Generally, the burden of proving an action has prescribed rests with the party claiming prescription; however, when the face of the petition reveals that prescription has run, the burden shifts to the plaintiff to prove prescription has been suspended, interrupted or renounced. Wimberly v. Gatch, 635 So.2d at 211; Caillet v. Dykstra, 94-2571 (La.App. 1 Cir. 12/15/95); 666 So.2d 383, writ denied, 96-0512 (La.4/8/96); 671 So.2d 339. Prescription is generally suspended pursuant to the rule of contra non valentem when the circumstances of the case fit within one of the following four categories: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2)where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4)where the cause of action is not known or reasonably knowable by the plaintiff even though his ignorance is not induced by the defendant. Wimberly v. Gatch, 635 So.2d at 211. Since the first three categories are clearly not relevant to this case, they will not be discussed. The fourth category, commonly referred to as the discovery rule, is relevant. It provides that prescription runs from the date plaintiff discovers or should have discovered facts upon which his cause of action is based. In other words, prescription does not accrue against a party ignorant of his rights provided that ignorance is not willful, negligent or unreasonable. Wimberly v. Gatch, 635 So.2d at 211-212. Appellant alleges that until it was certain of the true identity of the thief, it was prevented from bringing a civil action for damages.
*1282 Eddie Horridge and Malcolm Skeins, Jr. were the only witnesses at the hearing on the peremptory exception. Based upon their testimony, the trial court determined that principals of the appellant company were aware of Scott's involvement soon after the crimes occurred. Eddie Horridge admitted that he telephoned Scott at the Skeins' residence on the morning after the first theft took place to inquire as to whether the boy had any knowledge of the crimes. Scott replied that he did not. And, although the police reports state only that the matter "is under investigation" and do not indicate that any suspect names were provided by principals of Paragon, there was testimony that Bryan Horridge may have told officers that Scott could have been involved in the crimes. We must assume that someone at the job site gave investigators Scott's name as a possible perpetrator since he was questioned later that same day by police.
Eddie Horridge also testified, and Mr. Skeins confirmed, that some time in September of 1994, Scott's mother called Horridge asking for help because Scott had been "called in for questioning" by the police. Appellant insists that officials of the company remained unaware of Scott's guilt and any suspicions of his possible involvement in the crimes were not confirmed until the following May when the restitution check arrived.
In Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (1970), the test for what constitutes notice sufficient to commence the running of liberative prescription was set forth. This test was modified and restated as follows in Jordan v. Employee Transfer Corporation, 509 So.2d 420, 423 (La.1987):
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.
The trial judge found, according to his written reasons for judgment, that appellant's inaction was unreasonable and that it had failed to properly "seek out those whom [it] believ[ed] responsible" for the thefts against Putt-Putt. We disagree. It is apparent, based upon testimony that Eddie Horridge telephoned Scott the morning after the first theft and that Bryan Horridge provided Scott's name to the police, that the brothers suspected Scott's involvement in these crimes from the onset. However, it is equally apparent that they lacked actual proof to support their suspicions, otherwise the minor Skeins would likely have been arrested immediately following the thefts. The issue then becomes whether the mere suspicion that a party may be responsible for a crime is sufficient to support bringing a cause of action for damages. We conclude that it is not.
Applying the principles enounced in Jordan to the present circumstances, we find that the discovery rule prevented commencement of the running of prescription until principals of Paragon had sufficient notice to pursue a claim against a particular defendant. See Jordan v. Employee Transfer Corp., 509 So.2d at 424. At the earliest, this occurred in September of 1994 when Scott Skeins' mother contacted Eddie Horridge. This incident was probably sufficient to alert appellant to make further inquiry concerning whether there had been an arrest for the thefts against Putt-Putt. Prior to this point, appellant's inaction was reasonable. Therefore, until September of 1994, prescription was suspended pursuant the theory of contra non valentem, and appellant's suit, filed on August 31, 1995, was timely. In light of the above holding, appellant's second and alternative assignment of error that the trial court erred in denying it a new trial need not be addressed.
For the above reasons, the judgment of the trial court sustaining defendant's peremptory exception of prescription is reversed and this case is remanded to the trial court *1283 for further proceedings. Costs are assessed to defendant, Malcolm J. Skeins, Jr.
REVERSED AND REMANDED.