| t STEVEN R. PLOTKIN. Judge.
The sole issue in this appeal is whether the trial court applied the correct law of solidarity, La. C.C. art 2324B, to joint tortfeasors who were comparatively at fault.
Plaintiff-appellant, 639 Julia Street Partners, (Partners) appeal a judgment that awarded damages in the sum of $317, 445, and held that the defendant, City of New Orleans (CNO) 60% at fault and a co-defendant 40% at fault. The court then applied the 1996 amendment of La.C.C. art. 2423(B) and held each party liable for their own fault. Partners appeal relates only to the issue of which version of La. C.C. art. 2423(B) applies. Partners argue that the earlier amendment applies and that CNO is hable for 100%.
Facts
Prior to the 1984 World’s Fair in New Orleans, the City of New Orleans hired Design Consortium to prepare a landscape beautification project for St. Charles Avenue between Lee Circle and Poydras Street. The plans included the planting of eight red oak trees along the riverside of St. Charles. The city’s Department of Parks and Parkways as well as the Design Consortium selected the trees. At the time the trees were planted they were fourteen feet tall. In 1985 |2plaintiff, 639 Julia Street Partners, purchased a two-story brick building at the corner of St. Charles Avenue and Julia Street in New Orleans. The building was renovated so that there was a commercial business downstairs and architectural offices upstairs.
Peter Trapolin, the plaintiffs managing partner, testified that cracks started forming in the plaintiffs building in 1987. At the time the cracks appeared the plaintiffs did not know the cause. In the original petition filed in 1998, the plaintiff states that they attributed the crack to settlement of the building. Trapolin stated that there was a major crack that went from the ground up to the roof. This crack fluctuated in size over the years. Two structural engineers hired by the plaintiffs were not able to determine the cause of the cracks. Trapolin testified that in 1998 one of his clients suggested to him that the growth of the trees might be the cause of the cracks. Trapolin said that prior to this time he hadn’t considered the trees to be a cause of the cracks.
Dr. Yadong Qi, an urban forester and tree psychologist from Southern University, performed tests in 1999 and 2000 to determine the evapotranspiration rate. This is the rate that water evaporates from the trees. The tests indicated that each tree transevaporated 29 gallons per day. Dr. Qi testified that the main source of water for a tree is soil and precipitation. She said that due to the size of the tree and the expected root growth it was the wrong type of tree to plant in that area.
Dr. Malcolm Guidry, a consulting arborist, testified that smaller trees should have been selected for the site. Dr. Guidry said *1133 that the City of New Orleans should have known what impact these trees were going to have on the surrounding area. He said that there was documentation showing the damage that trees can cause to buildings. Thus, the trees grew from the time of planting, and during the 13course of many years, caused the cracking and splitting of Partner’s property. The building continued to crack and settle until the cause was determined in 1998.
Peter Raymond, a general contractor, testified that the new footing would cost $301,695. Raymond testified that he would have to set up a demolition, which involved trenching out either side of the walls to be able to repair the footing. He stated that he would have to work both inside and out and that the job would require a lot of labor.
In the reasons for judgment, the trial judge found that “reasonable steps could have been taken to determine that the cherry bark oak trees were the wrong trees for the area along St. Charles Avenue where planted and would likely cause damage to the adjacent property.” The trial court concluded that the defendant could have selected trees that would not have caused the type of damage to the building that these oak trees caused. The court relies on the language of La. R.S. 9:2800 for the proposition that a public entity is responsible under strict liability for damage caused by the condition of buildings within its care and custody. The City did not appeal the issue of liability.
The trial court held CNO 60% at fault and Design Consortium 40% at fault. The court applied the 1996 amendments to La. C.C. art. 2423(B), which limits a joint tortfeasor’s liability to their share of fault only.
Comparative Fault Allocation
The plaintiffs argue that the law of joint and solidary obligations that was in effect in 1983 requires the defendant CNO to pay 100% of the damages. However, all parties agree that the joint and solidarity laws have changed twice since then. The 1987 amendments to La.C.C. art. 2423(B) continued solidarity but there was no solidarity if the plaintiff was at fault and his fault exceeded that of a particular ^defendant. Further, solidarity was abolished among joint tortfeasors except to the extent necessary for the person suffering injury to recover 50% of his recoverable damages. In 1996, the legislature amended La. C.C. art. 2324(B) again, to abrogate solidarity in non-intentional tort cases, eliminating the 50% rule, thus mandating that each non-intentional plaintiff is liable only for its share of liability. It provides in part:
A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person’s identity is not known or reasonably ascertainable.
The Louisiana Supreme Court discussed whether La. C.C. Art. 2324 should be applied retroactively in Aucoin v. State Department of Transportation and Development, 97-1938, 97-1967, p. 6 (La.4/24/98), 712 So.2d 62, 67. In that case the court held:
Laws which are procedural or interpretive may apply retroactively, but “[i]n the absence of contrary legislative expression, substantive laws apply prospectively only.” La.Civ.Code art. 6. Laws establishing new rules, rights, and duties, or changing existing ones are substantive. Laws which merely estab *1134 lish the meaning the statute had from the time of its enactment are interpretive. Keith [v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97), 694 So.2d] at 183; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 817 (La.1992). Before 1996, article 2324(B) held defendants liable “solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages.” The 1996 amended article revoked solidarity for non-conspiratorial acts and expressed defendant’s liability instead as a “joint and divisible obligation. A joint tortfea-sor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person.... ” That shift from solidary liability to joint and several obligation altered the existing rule. Moreover, since the amendment resulted in changing the amount of damages recoverable, the change was clearly substantive. Socorro v. City of New Orleans, 579 So.2d 931, 944 (La.1991). As such, the |5amendment can have only prospective application. La. Civ.Code art. 6. Therefore, the applicable article 2324(B) was that which existed at the time of the accident.
In order to determine which version of La. C.C. Art. 2324 applies it is necessary to decide when the cause of action accrued. Applying civilian methodology, we begin by analogy to La.C.C. art. 3493 on Damage to immovable property, commencement and accrual of prescription, which states, “When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage.”
In this case the original damage to the property commenced in 1987, but the cause was undetermined. It was not until 1998, that it was discovered that the growth of the tree roots was the genesis of the cracks. The plaintiffs admit that they did not acquire or could not have acquired the knowledge of what was the cause of their property damage until 1998. Thus, the plaintiffs cause of action did not arise against the CNO until 1998.
We acknowledge that the property damage was first noticed in 1987. However, prescription does not commence against an obligee, who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. Tilley v. Kennedy, 605 So.2d 226, 228 (La.App. 2d Cir.1992). Mere suspicion that a party may be responsible for a tort is not sufficient to commence the running of prescription. Paragon Development Group, Inc. v. Skeins, (La.App. 1 Cir. 9/19/97) 700 So.2d 1279. There is nothing in the record to indicate that the plaintiffs realized a connection between the tree growth | fiand the building cracks, until 1997. In fact, in the original petition, the plaintiffs allege that the building settling on its foundation caused the damage.
We decline to apply the doctrine of a continuing tort to this case. This is not a case of multiple, distinct acts by the tortfeasor which cause separate and distinct damages, wherein each act initiates separate and distinct damages. The single wrongful conduct was the negligent selection and planting of the red oak trees. The latent property damage was continuing only in the sense of the gradual tree growth, not individual tortious conduct and damage. In a similar case, a third person, without the defendant’s consent, erected a canal on defendant’s property that caused damage to plaintiffs use of her property. The Supreme' Court held that the defendant’s conduct did not amount to a “con- *1135 timing tort”, and the plaintiffs claim had prescribed. The Court identified the actual digging of the canal as the “operating cause” of plaintiffs injury and held that the continued presence of the canal and the consequent continuous division of the water were simply the continuing ill effects arising from a single tortious act. A continuing tort is occasioned by continual unlawful acts, not the continuation of the ill effects of an original, wrongful act. Crump v. Sabine River Authority, 98-2326 (La.6/29/99), 737 So.2d 720. Thus, the cause of action, for the purpose of determining solidarity, arose in 1998 and the applicable statute is the 1996 amendments to La. C.C. Art. 2324(B).
Conclusion
The trial court applied the correct 1996 amendment to La. C.C. Art. 2324(B) which provided that a joint tortfeasor shall not be liable for more than his degree of fault. The judgment is affirmed. All costs are assessed to the appellant.
AFFIRMED.