652 So.2d 44 (1995)
CAMP, DRESSER & McKEE, INC. and Richard Cloutier
v.
STEIMLE AND ASSOCIATES, INC., Stephen E. Steimle, Sunbelt Detective Agency, Inc., and William Douglas Emmer.
No. 94-CA-547.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
*46 Robert A. Kutcher, Nicole S. Tygier, Bronfin & Heller, New Orleans, for appellants Steimle and Associates, Inc. and Stephen E. Steimle.
Bienvenu, Foster, Ryan & O'Bannon, Leonard Young, New Orleans, for appellants William Douglas Emmer and Sunbelt Detective Agency, Inc.
George Frazier, L. Eades Hogu, Carolyn S. Parmenter, Kenneth A. Mayeaux, Lemle & Kelleher, New Orleans, for plaintiffs, appellees Camp, Dresser & McKee, Inc. and Richard Cloutier.
Before KLIEBERT, C.J., and GAUDIN and CANNELLA, JJ.
CANNELLA, Judge.
Defendants, Steimle and Associates, Inc. and Stephen Steimle (hereinafter collectively "Steimle"), W.D. Emmer and Sunbelt Detective Agency, Inc. (hereinafter collectively "Sunbelt") appeal from a judgment that grants a preliminary injunction to plaintiffs, Camp, Dresser and McKee, Inc. and Richard Cloutier (hereinafter collectively "CDM"). The judgment enjoined defendants from entering trash dumpsters located at the offices of Camp, Dresser and McKee, Inc., removing trash from the dumpsters and disclosing or disseminating the information in any of the documents previously removed from the dumpster, except within the parameters of discovery and trial preparation for the pending lawsuit. We affirm.
Camp, Dresser and McKee, Inc. and Steimle and Associates, Inc., are engineering firms. In September 1991, CDM filed a petition for damages against Steimle and Sunbelt alleging that Steimle and Associates, Inc. subcontracted with Camp, Dresser and McKee, Inc. to perform certain engineering work in 1980, and that for ten years, they performed this work. It also alleged that Steimle and Associates, Inc. was a competitor in connection with other engineering contracts and that in 1989, it began a systematic and intentional plan to destroy the business of Camp, Dresser and McKee, Inc., after it lost a contract to them. Among other acts, CDM asserts that Steimle hired Sunbelt to rummage through CDM's trash dumpsters and remove documents that were later given to the local newspapers for publication, the purpose of which was to gain a competitive edge by discrediting CDM. An amended petition alleged more detailed statements of wrongdoing. Documents retrieved from the dumpster included client lists, internal memos addressing problems of the company, memoranda on financial matters, discussion of client contacts, strategy plans, private material such as handwritten love notes, sensitive data relating to the computer system and a document so sensitive that Richard Cloutier prepared it at home.
Relief sought included actions for abuse of rights, intentional interference with business interests, invasion of privacy and infliction of mental distress. CDM further asserted violations of the Louisiana Unfair Trade Practices and Consumer Protection Law (herein referred to as the unfair trade practices act), La.R.S. 51:1401 et seq., and requested a protective order and preliminary and permanent injunctions to bar Steimle and Sunbelt from entering the trash dumpsters and disseminating the information collected from the trash. Among the allegations was the statement that Emmer was found at the dumpster used by CDM on January 30, 1992, some five *47 months previous to the amended petition filed June 22, 1992.
The initial hearing on the injunction was held in June 1992. Following the hearing, the trial judge granted the preliminary injunction enjoining Steimle and Sunbelt from entering the trash dumpsters and removing CDM's trash. In addition, Steimle and Sunbelt were enjoined from disseminating documents and material recovered from the CDM trash listed on the CDM's exhibit to the petition. Steimle and Sunbelt appealed the judgment. On October 26, 1993, this court reversed, finding that the trial judge granted the injunction without testimony and the submission of evidence. 628 So.2d 281. Thus, CDM failed to present a prima facie case that they would prevail on the evidence. The case was remanded and on February 24-25, 1994 and March 7, 1994, another hearing was held. The trial judge again granted the preliminary injunction enjoining Steimle and Sunbelt from entering the dumpsters on the property of CDM and from disseminating or disclosing any of the information previously taken from the trash, except within the parameters of discovery for the pending lawsuit. He found that CDM showed irreparable injury and made a prima facie case that they would likely succeed on the unfair trade practices act claim.
On appeal, Steimle and Sunbelt assert that the trial judge erred in granting the injunction because CDM failed to show an immediate threat or continuing conduct or irreparable harm. They also contend that CDM failed to present a prima facie case that they can succeed on the merits for unfair trade practices under the unfair trade practices act, La.R.S. 51:1401 et seq., because the action is preempted under R.S. 51:1409(E)
"A preliminary injunction shall issue in all cases where irreparable injury, loss or damage may otherwise result to the applicant, or in other cases specifically provided by law; ..." La.C.C.P. art. 3601. The preliminary injunction is an interlocutory procedural device designed to preserve the status quo pending a trial of the issues on the merits of the case; and the trial judge has great discretion in granting or denying relief. Corrosion Specialties v. Dicharry, 93-CA-196 (La.App. 5th Cir. 2/9/94); 631 So.2d 1389, 1391-1392, writ denied, 94-C-0597 (La. 3/25/94), 635 So.2d 242. In order to be entitled to relief, the moving party must show irreparable injury if the injunction is not granted, that he is entitled to the relief sought and must make a prima facie showing that he will prevail on the merits. Id. at 1391-1392. Irreparable injury, for purposes of the preliminary injunction, means that the applicant cannot be adequately compensated in money damages for the injury or that he will suffer injuries which cannot be measured by pecuniary standards. Corrosion Specialties at 1392; Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314, 319 (La.1981).
It is not necessary to show irreparable injury, however, when the act complained of is unlawful. Ouachita Parish Police Jury v. American Waste and Pollution Control, 606 So.2d 1341, 1350 (La.App. 2nd Cir.1992), writ denied 609 So.2d 234 (La.1992) [Violation of a contract which incorporated federal and state sanitary landfill law]; La. Asso. Gen. Contractors v. Calcasieu, 572 So.2d 623, 628 (La. App. 3rd Cir.1990), affirmed 586 So.2d 1354 (La.1991) [Violation of Public Bid Law]; Miller v. Knorr, 553 So.2d 1043 (La.App. 4th Cir.1989) [Violation of zoning ordinance]; Hays v. City of Baton Rouge, 421 So.2d 347, 349 (La.App. 1st Cir.1982), writ denied, 423 So.2d 1166 (La.1982) [Violation of state law regarding Group Homes]; Smith v. City of Alexandria, 420 So.2d 1329, 1332 (La.App. 3rd Cir.1982) [Violation of city charter]; Caffery v. Powell, 320 So.2d 223 (La.App. 3rd Cir.1975) [Violation by trespass of roaming cattle]; Whalen v. Brinkman, 258 So.2d 145, 147 (La.App. 1st Cir.1972) [Violation of sale and seizure statute].

IRREPARABLE INJURY AND PRIMA FACIE CASE
The record reflects that Steimle and Sunbelt engaged in the conduct of investigating the trash belonging to CDM in 1989 by going through the trash dumpster located on the premises of CDM's office building. The record further reflects that Steimle and Sunbelt obtained documents from the trash and disseminated portions of the information to the news media. At the hearing for the preliminary injunction, CDM produced evidence to *48 indicate loss of business, loss of business reputation, economic loss, mental distress, etc. For the most part, these are compensable in money damages. However, the Louisiana criminal trespass law, the Jefferson Parish Code and the unfair trade practices act prohibit the activities that defendants engaged in which are the subject of the suit and the injunction request. As we have already noted, it is not necessary to show irreparable injury when the act complained of is unlawful.
The state trespass law prohibits the intentional entering of any structure or movable without authorization. La.R.S. 14:63. Any person who procures another to commit the crime is a principal. La.R.S. 14:24. The Jefferson Parish Code section 16-2 prohibits "scavenging", defined as "the uncontrolled removal of material from a solid waste storage, transfer, processing or disposal site." In addition, La.R.S. 51:1405 of the unfair trade practice act declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."
At CDM's request, the trial judge agreed to take judicial notice of the applicable laws. After our review, we find that the waste disposal container in this case meets the criteria under the Jefferson Code. The facts further show that, for purposes of the injunction, Sunbelt and Emmer were likely in violation of the Jefferson Code by removing solid waste from the disposal "site" and that Steimle and Sunbelt probably violated the trespass laws, as well. Thus, CDM did not need to show irreparable injury to enjoin defendants from entering the property and going through the trash belonging to plaintiffs.
The unfair trade practices act prohibits the use of unfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce. The courts decide what constitutes unfair trade practices. Marshall v. Citicorp, 601 So.2d 669 (La.App. 5th Cir.1992). However, in the courts it has been held that, "A trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Marshall, at 670. The act applies to business competitors, as well as consumers. See: R.S. 51:1409; Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La.App. 1st Cir.1984).
The actions complained of in the petitions in this case, that Steimle and Sunbelt set out to obtain a competitive edge or to destroy CDM's business by the dissemination of illegally obtained information, was supported by the evidence at the hearing. Furthermore, for purposes of a prima facie showing, the evidence that Steimle and Sunbelt disseminated selective and misleading information was also shown. It was clear that at least some of the documents used as a basis for some of the newspaper articles contained erroneous information which had been discarded and was not used for any purpose in the conduct of CDM's business. As a result, CDM has met its burden of showing a likelihood of succeeding on the unfair trade practices act claim. Since unfair trade practices are deemed unlawful conduct under the act, CDM is not required to show irreparable injury to enjoin Steimle and Sunbelt from future dissemination of the information gathered from its dumpster. Thus, whether or not CDM showed irreparable injury is irrelevant in this case.
Sunbelt and Emmer argue that the unfair trade practices act does not apply to them because they are neither consumers or business competitors. However, we agree with the First Circuit Court of Appeal that anyone who conspires to injure a party's competitor in violation of La.R.S. 51:1401 et seq. is liable in solido with that party. See: Strahan v. Louisiana, No. 93-CA-0374 (La. App. 1st Cir. 8/25/94) 645 So.2d 1162; Roustabouts, Inc. v. Hamer, 447 So.2d 543 (La. App. 1st Cir.1984). Here, there is a prima facie showing that Sunbelt and Emmer conspired with Steimle, to injure CDM, who is Steimle's business competitor.

PEREMPTION
Steimle and Sunbelt assert that even if the unfair trade practices act applies, the claim is preempted under La.R.S. 51:1409 and the injunction was improperly granted. *49 CDM does not dispute that all claims arising prior to the date the petition was filed are preempted. However, when suit is filed in a court of competent jurisdiction within the one year period, the claim is not extinguished and CDM is not required to continually amend their suit to cover acts committed after the suit was initiated.
La.C.C. art. 3458 states that peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La.C.C. art. 3461 states that peremption may not be renounced, interrupted or suspended. However, the comments note that when an action asserting a right subject to peremption has been commenced or served as provided in Article 3462, the right has been exercised and so long as the action is pending the lapse of the period of peremption does not extinguish the right. Thus, the courts have held that an amendment asserting facts arising from the same conduct relates back. See: Monroe Medical Clinic, Inc. v. Hospital Corporation of America, 622 So.2d 760, 776-777 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 1135 (La.1993); Thibaut v. Thibaut, 607 So.2d 587, 608-609 (La.App. 1st Cir. 1992), writ denied, 612 So.2d 37 (La.1993).
In this case, CDM filed suit on September 12, 1991 for scavenging acts that Steimle and Sunbelt began in 1989, but which CDM did not discover until July 1991. The suit presented claims, inter alia, for violation of the unfair trade practices act. The petition was amended in June of 1992 to include more details, including an incident when Emmer was caught rummaging in the trash dumpster, which occurred five months before the date of the amended petition. Both of the petitions assert a cause of action under the unfair trade practices act.
The peremptive statute does not require CDM to continually amend a petition to avoid peremption for acts which occur after the initial suit is filed. The "right" was exercised when CDM filed the original petition. Thus, we find no merit to Steimle and Sunbelt's argument that CDM has somehow lost the right to the unfair trade practices claim.

IMMEDIACY OF ENJOINED ACTS
Steimle and Sunbelt also contend that the injunction was improper because the evidence showed that they have agreed that they will not go through CDM's trash and will not disseminate the information to anyone. Thus, CDM did not show that Steimle and Sunbelt have engaged or intend to engage in the prohibited conduct in the future.
CDM disagrees. It asserts that the question is whether it is reasonable to expect that Steimle and Sunbelt will engage in future misconduct. They cite United States v. W. T. Grant Co., 345 U.S. 629, n. 5, page 629, 73 S.Ct. 894, n. 5, page 897, 97 L.Ed. 1303 (1953). That case holds that pleas of repentance or reform cannot defeat injunctive relief, especially when the abandonment of the activity seems timed to anticipate suit and there is a possibility of resumption.
The record reflects that throughout the hearing, counsel for Steimle continuously argued that they have a constitutional right to use the information in any manner, because the information has already been disseminated and is in the public domain. Their witnesses testified that they do not intend to use the information or continue to rummage through CDM's trash. However, Steimle and Sunbelt continue to have access to the material (which numbers approximately 5,000 papers).
The trial judge apparently was concerned that renunciation statements would have no legal effect on preventing Steimle and Sunbelt from engaging in those acts sought to be enjoined and believed that there was a reasonable possibility that they will do so in the future, despite these statements. After our review, we agree, considering the history of this case, the hostility of the parties and the nature of the dispute. We also consider the vehement arguments by counsel for Steimle that they should be able to use the information as a matter of constitutional right. They clearly are convinced that they are entitled to use the information. Thus, we find that CDM has shown a reasonable threat that Steimle and Sunbelt will repeat their conduct and CDM is thus entitled to the preliminary injunction.
*50 Steimle and Sunbelt also argue that CDM does not have standing to enjoin them from disseminating any information recovered from personal documents of their employees. Sunbelt and Emmer specifically argue that the expectation of privacy is so low that they are entitled to retrieve and use the information. The documents retrieved from the dumpster number in the thousands. Some of those papers include personal information on employees, as well as the business related documents. We disagree.
The documents in this case are numerous. Whether or not they contain personal information related to employees, the question is simply whether CDM showed a likelihood of succeeding on the claim, which we have found that it did. Furthermore, CDM has an interest in protecting the information it maintains on its employees. Thus, we find no merit to the argument that CDM lacks any standing for a blanket injunction.
We likewise find no merit in the argument that the expectation of privacy is too low to prohibit public disclosure. The purpose of the unfair trade practices act is to prevent unscrupulous behavior in the conduct of business. See: Marshall at 670; La.R.S. 51:1405(A). It is injurious use of the information that CDM is seeking to prevent, regardless of the expectation of privacy. Furthermore, we find that for civil purposes, the expectation of privacy in the discarding of trash is not so low as to permit the material to be removed without authority when the trash, which is intended to be disposed of, is subsequently published or used in a manner detrimental to the person discarding the trash.
Accordingly, the judgment granting the preliminary injunction is hereby affirmed. The costs of appeal are to be paid by appellants.
AFFIRMED.