725 So.2d 523 (1998)
CAPITOL HOUSE PRESERVATION COMPANY, L.L.C.
v.
PERRYMAN CONSULTANTS, INC., et al.
No. 98 CW 1514.
Court of Appeal of Louisiana, First Circuit.
December 10, 1998.
Rehearing Denied January 25, 1999.
*524 Claude F. Reynaud, Jr., Emile C. Rolfs, III, Jeanne C. Comeaux, Baton Rouge, Counsel for Relators, Steve Urie, Mark Bradley, Paula Bradley, Ronald Johnson and Lodging Systems, Inc.
John Michael Parker, Marc S. Whitfield, John S. Campbell, III, Baton Rouge, Counsel for Relator, Jazz Enterprises, Inc.
Charles S. Lambert, Jr., Baton Rouge, Counsel for Respondent, Capitol House Preservation Company, L.L.C.
Kirk A. Bergeron, Baton Rouge, Counsel for Respondent, M. Ray Perryman, individually, and Perryman Consultants, Inc.
BEFORE: GONZALES, KUHN and WEIMER, JJ.
GONZALES, J.
In this action brought under the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPCPL), the trial court denied defendants' exceptions of prescription/peremption. This court granted the defendants' application seeking to invoke the supervisory jurisdiction of this court. The issues were briefed and argued, and, after a careful and thorough review, we affirm the denial of the exceptions.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Capitol House Preservation Company (Capitol House), is the successor in interest to Lady Luck Baton Rouge Casino, *525 Inc. (Lady Luck).[1] Lady Luck was one of three applicants vying for two riverboat gaming licenses to be awarded in East Baton Rouge Parish in 1993. The other two applicants were Jazz Enterprises, Inc. and Louisiana Casino Cruises, Inc. At some point during the process, Jazz Enterprises, Inc. entered into an agreement with Argosy Gaming Company/Argosy of Louisiana, Inc. (Argosy) to submit a joint application for a license as the Catfish Queen Partnership.
Each applicant submitted an application and the required information. A hearing was held on July 7, 8, and 11, 1994, during which the three applicants were given an opportunity to make a presentation. During the hearing, Perryman Consultants, Inc., which had been hired to rank the three applicants according to which was best qualified, issued its recommendation ranking Catfish Queen Partnership/Jazz Enterprises first, Louisiana Casino Cruises, Inc. second, and Lady Luck third. On July 18, 1994, the Riverboat Gaming Enforcement Division awarded the two licenses to Catfish Queen Partnership/Jazz Enterprises, Inc. and Louisiana Casino Cruises, Inc. The Division noted in Supplemental Reasons issued July 22, 1994, that Lady Luck was `suitable," and, in the Original Reasons issued July 18, 1994, had stated that the "grounds for the denial [of a license to Lady Luck were] that all fifteen licenses authorized by [the] Louisiana Riverboat Economic Development and Gaming Control Act have been issued."
On July 10, 1995, Capitol House filed a suit in the Nineteenth Judicial District Court against Perryman Consultants, Inc. and M. Ray Perryman alleging negligence, professional negligence, and unfair trade practice violations. On July 18, 1995, Capitol House also filed a lawsuit in the U.S. District Court for the Middle District of Louisiana against Jazz Enterprises, Inc., Steve Urie, Margaret Urie, Mark Bradley, Paula Bradley, Ronald Johnson, Marilyn Johnson, Lodging Systems, Inc., Catfish Queen Partnership in Commendam, and Argosy, alleging violations of the Organized Crime Control Act of 1970, Racketeer Influenced and Corrupt Organizations (RICO), the LUTPCPL, and Louisiana tort law by various of the defendants.[2]
On November 17, 1997, the federal court dismissed the federal RICO claim with prejudice and further dismissed the state law claims, declining to exercise pendent jurisdiction over them. On November 26, 1997, Capitol House amended the Perryman suit filed in the Nineteenth Judicial District Court to add as defendants Jazz Enterprises, Inc., Steve Urie, Mark Bradley, Paula Bradley, Ronald Johnson, Lodging Systems, Inc., Catfish Queen Partnership In Commendam, and Argosy, alleging violations of the LUTPCPL.[3] On November 28, 1997, Capitol House filed a motion in federal district court seeking to have the judgment dismissing the state claims amended as the court had mistakenly dismissed them "with" prejudice. On December 20, 1997, the amended judgment dismissing the state claims "without" prejudice was signed by the federal district court judge.
In response to the amendment of the state court petition adding them as defendants, Urie, Mark and Paula Bradley, Johnson, and Lodging Systems, Inc. (individual defendants) filed an exception of prescription. Likewise, Jazz Enterprises, Inc., Argosy, and Catfish Queen Partnership in Commendam also filed exceptions of no cause of action, peremption and prescription, all alleging Capitol House's claims were time barred. The trial court sustained the exception as to *526 Argosy and Catfish Queen Partnership in Commendam and denied the exception as to Jazz Enterprises, Inc. and the individual defendants.
From the denial of their exceptions, Jazz Enterprises, Inc. and the individual defendants sought the supervisory jurisdiction of this court.

EXCEPTION OF PRESCRIPTION
If a plaintiff's claims are not prescribed on the face of the petition, the burden is on the party raising the objection of prescription to prove the facts to support the objection. However, when the face of the petition reveals that prescription has run, the burden shifts to the plaintiff to show prescription has been suspended, interrupted or renounced. Paragon Development Group, Inc. v. Skeins, 96-2125 (La.App. 1 Cir. 9/19/97), 700 So.2d 1279, 1281; Tranum v. Hebert, 581 So.2d 1023, 1030 (La.App. 1 Cir. 1991), writ denied, 584 So.2d 1169 (La.1991). At a trial of a peremptory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. In the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations thereof are accepted as true. Our Lady of the Lake Hospital v. Vanner, 95-0754 (La.App. 1 Cir. 12/15/95), 669 So.2d 463, 464.

ANALYSIS
With respect to the instant defendants, Capitol House's petition alleges violations of the LUTPCPL. Under La. R.S. 51:1409(E), such an action "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." Every court which has addressed the issue has held this time limitation is peremptive in nature. See Mayo v. Simon, 94-590 (La.App. 3 Cir. 11/2/94), 646 So.2d 973, 976; Fox v. Dupree, 633 So.2d 612, 614 (La.App. 1 Cir. 1993), writ denied, 94-0296 (La.3/25/94), 635 So.2d 233; Kuebler v. Martin, 610 So.2d 270, 271 (La.App. 5 Cir. 1992), writ not considered, 613 So.2d 987 (La.1993); Canal Marine Supply, Inc. v. Outboard Marine Corporation of Waukegan, Illinois, 522 So.2d 1201, 1203-1204 (La.App. 4 Cir.1988); Neill v. Rusk, 745 F.Supp. 362, 364 (E.D.La.1988). Moreover, this time limitation possesses the characteristics of a peremptive statute as enunciated by the supreme court in State, Division of Administration v. McInnis Brothers Construction, 97-0742 (La.10/21/97), 701 So.2d 937, 940-942.
A peremptive period may not be renounced, interrupted, or suspended. La. C.C. art. 3461. "Nevertheless, when an action asserting a right subject to peremption has been commenced or served as provided in [La. C.C.] Article 3462, the right has been exercised and so long as the action is pending the lapse of the period of peremption does not extinguish the right." La. C.C. art. 3461, Revision Comments1982, comment (c). Under La. C.C. art. 3462, a time limitation is interrupted when the obligee commences action against the obligor in a court of competent jurisdiction and venue. This interruption continues as long as the suit is pending. La. C.C. art. 3463.
In the instant case, Capitol House filed suit against Jazz Enterprises, Inc. and the individual defendants in the U.S. District Court for the Middle District of Louisiana on July 18, 1995, alleging violations of RICO, the LUTPCPL, and state tort law. No party alleges the federal district court was not a court of competent jurisdiction and venue.
On November 18, 1997, the federal district court signed a judgment dismissing all claims. On November 26, 1997, the instant state suit was amended to add as defendants Jazz Enterprises, Inc. and the individual defendants. On November 28, 1997, within the appropriate delays proscribed by Fed. Rules Civ. Proc. Rule 59(e), Capitol House filed a motion in federal court seeking to have the November 18, 1997 judgment amended. On December 20, 1997, the federal court granted Capitol House's motion and, on December 22, 1997, entered the amended judgment which dismissed the federal claims with prejudice and the state law claims without prejudice. Thus, the addition of Jazz Enterprises, Inc. and the individual defendants to the state suit was made while the federal suit was still "pending" for purposes of La. C.C.P. arts. *527 3461-3463.[4] As such, Capitol House's unfair trade practice claim is not perempted if the federal suit filed on July 18, 1995, was filed within "one year running from the time of the transaction or act which gave rise to the" unfair trade practice action.
In a factually involved and lengthy supplemental petition, Capitol House alleges defendants violated the LUTPCPL when they made numerous false and/or misleading representations about themselves and about Capitol House (1) in their application for a license, (2) at various points during the application process, and (3) during the hearings on the applications held July 7, 8, and 11, 1994. Capitol House additionally alleges the defendants violated the LUTPCPL by failing to comply with a statutory duty to disclose the fraudulent and misleading material information they had allegedly submitted.[5] Louisiana Revised Statute 27:70(C) provides, in pertinent part:
All persons licensed or permitted or required to be licensed or permitted under this Chapter shall have a duty to inform the division[6] of any action which they believe would constitute a violation of this Chapter.
It is a violation of Title 27, Chapter 4 of the Louisiana Revised Statutes, titled "The Louisiana Riverboat Economic Development and Gaming Control Act," to "knowingly or intentionally make a material false statement in any application for a license to conduct gaming activities," to supply "untrue or misleading" information "as to a material fact pertaining to the qualification criteria," or to fail to provide "information and documentation to reveal any fact material to qualification." La. R.S. 27:99(A) and 27:76(2).[7] Consequently, Capitol House claims not only that the misrepresentations and untruths themselves were unfair trade practices but that the defendants' subsequent failure to disclose these deceptions as required by statute is also an unfair trade practice.
The duty under La. R.S. 27:70(C) to inform the division of any action which constitutes a violation of Chapter 4 rests with all "persons" who are "licensed or permitted" or "required to be licensed or permitted." "Person" is defined at La. R.S. 27:44(20) as "an individual, partnership, corporation, unincorporated association, or other legal entity." A "license" is a "license or authorization to conduct gaming activities on a riverboat," and a "permit" is "any permit or authorization" issued under Chapter 4 "other than a gaming license." La. R.S. 27:44(14) and (18).
Among other things, Capitol House's petition alleges that Steve Urie, Mark Bradley, Paula Bradley and Ronald Johnson are shareholders and principals of Jazz Enterprises, Inc. and that Urie and Johnson are also shareholders and principals of Lodging Systems, Inc. The petition additionally alleges Lodging Systems, Inc. provided all of the operating costs of Jazz Enterprises, Inc. and is also a shareholder of Jazz Enterprises, Inc. The petition also alleges that Jazz Enterprises, Inc., after participating for some time in the application process on its own, later entered into a partnership with Argosy called Catfish Queen Partnership in Commendam, which partnership ultimately was awarded a license by the Riverboat Gaming *528 Enforcement Division on July 18, 1994. Finally, the petition alleges multiple acts of fraud and misrepresentation by all defendants in the submission of required information at various points in the application process beginning in early 1993.
From the foregoing, it appears Capitol House's claims are not prescribed on the face of the petition. Capitol House's petition asserts defendantsshareholders and principals of an entity ultimately awarded a riverboat gaming licensemade numerous misrepresentations and false statements during the application process with respect to material facts pertinent to the qualification criteria, that these defendants have breached their statutory duty to disclose these violations, and that this breach is an unfair trade practice which caused damages to Capitol House. We find defendants, alleged to be shareholders and principals of an entity awarded a riverboat license, are "persons" who have a duty to disclose under La. R.S. 27:70(C).[8] The duty to disclose violations of the Riverboat Economic Development and Gaming Control Act under La. R.S. 27:70(C) is a continuing one which does not end with the receipt of a license and is equally applicable whether a "person" is an applicant, or, subsequently, a licensee. Each day that a "person" fails to disclose a violation of the Act of which he is aware constitutes a new breach of the statutory duty to disclose which breach continues anew each day until the disclosure occurs. Each day the defendants, as applicants or as licensees, failed to disclose the alleged misrepresentations, even after July 18, 1994, constituted a new violation of the statutory duty and may constitute an unfair trade practice should the trial court so find. Thus, the one year peremptive period applicable to an unfair trade practice claim begins to run anew each day La. R.S. 27:70(C) has been violated by the failure to disclose as mandated by the statute.
Because the petition is not prescribed on its face, the burden is on the party raising the objection of prescription to prove the facts to support the objection. Paragon Development Group, Inc., 700 So.2d at 1281; Tranum, 581 So.2d at 1030. Defendants did not present any evidence to controvert Capitol House's allegations of misrepresentations, the failure to disclose the misrepresentations, and the continued failure to disclose the alleged misrepresentations. As noted, in the absence of evidence, the objection of prescription must be decided upon the facts alleged in the petition, and all allegations thereof are accepted as true. Our Lady of the Lake Hospital, 669 So.2d at 464. Capitol House's petition alleges a breach of a statutory duty to disclose which has continued each and every day since the alleged misrepresentations occurred, even after the award of the licenses on July 18, 1994, and which breach therefore occurred well within the one year period prior to the filing of the federal suit on July 18, 1995. As such, the instant suit is not perempted.[9]
Defendants argue a violation of a statute may constitute an unfair trade practice *529 only when a corresponding statute makes such violation an unfair trade practice, citing Fox v. Dupree, 633 So.2d 612 (La.App. 1 Cir.1993), writ denied, 94-0296 (La.3/25/94), 635 So.2d 233. In Fox, plaintiffs-in-reconvention had alleged defendant-in-reconvention had violated the Louisiana Loan Brokers' statute, constituting an unfair trade practice. The trial court sustained an exception of prescription as to this claim. This court reversed, observing:
The trial court also erred in dismissing any unfair trade practice claims as prescribed. An unfair trade practice claim "prescribes" one year from the transaction or act which gives rise to the right of action. LSA-R.S. 51:1409(E). This court has construed the one-year period as peremptive, rather than prescriptive. As construed, the term is not subject to interruption or suspension, even if the aggrieved party was unaware of acts giving rise to the right of action.
Plaintiff's alleged failure to comply with the bond filing and disclosure requirements of the Loan Brokers' statute was a continuing violation of the statute. Every day he was not in compliance with the law, plaintiff violated the statute. The law provides that a violation of the statute is an unfair trade practice. LSA-R.S. 51:1915(A). The private right of action for an unfair trade practice perempts one year from the date [of] the transaction or act giving rise to the right of action. LSA-R.S. 51:1409(E). In this case, violation of the Loan Brokers' statute gives rise to an unfair trade practice claim. The peremptive term could not even begin to run until a loan broker complied with the law because every day he is in violation gives rise to a new right of action for an unfair trade practice.
Fox, 633 So.2d at 614 (citations omitted)(emphasis added).
Fox does not stand for the proposition that a violation of a statute can constitute an unfair trade practice only if some other statutory provision describes it as such. The court in Fox was not faced with such an issue. Because the statutes at issue in Fox provided that a violation thereof constituted an unfair trade practice, it was not necessary for the court to reach the issue of whether a violation of a statute in the absence of the unfair trade practice language could nevertheless constitute an unfair trade practice.
The LUTPCPL provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. 51:1405(A). The broad language of this statute necessarily requires a case-by-case determination of what constitutes unfair competition or an unfair trade practice. Walker v. Louisiana Health Management Company, 94-1396 (La. App. 1 Cir. 12/15/95), 666 So.2d 415, 421, writ denied, 96-0571 (La.4/19/96), 671 So.2d 922; Wyatt v. PO2, Inc., 26,675 (La.App. 2 Cir. 3/1/95), 651 So.2d 359, 361, writ denied, 95-0822 (La.5/5/95), 654 So.2d 331; Strahan v. State, Department of Agriculture and Forestry, 93-0374 (La.App. 1 Cir. 8/25/94), 645 So.2d 1162, 1165, writ denied, 95-0040 (La.2/17/95), 650 So.2d 256. The courts decide what constitutes an unfair trade practice. Camp, Dresser & McKee, Inc. v. Steimle and Associates, Inc., 94-547 (La. App. 5 Cir. 2/15/95), 652 So.2d 44, 48; Wyatt, 651 So.2d at 361. Further, it has been noted:
[T]he language of [Section 1405(A)] tracks closely that of the Federal statute, 15 U.S.C. Section 45(a). Because of the variety of possible unfair and deceptive practices, the Federal statute was intentionally broadly written, leaving the determination of individual violations to the Commission and the courts. Our legislature has expressed a similar intention in patterning our law so closely on the Federal statute.
Strahan, 645 So.2d at 1165. See also Guste v. Demars, 330 So.2d 123, 125 (La.App. 1 Cir.1976).
Generally, the courts have held that a trade practice is unfair when it offends public policy, and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, Camp, 652 So.2d at 48; Strahan, 645 So.2d at 1165, or when it involves fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct. United Group of National Paper Distributors, Inc. v. Vinson, 27,739 *530 (La.App. 2 Cir. 1/25/96), 666 So.2d 1338, 1346, writ denied, 96-0714 (La.9/27/96), 679 So.2d 1358; Walker, 666 So.2d at 421.
Given the breadth of a trial court's discretion in determining whether particular conduct constitutes an unfair trade practice or unfair competition under La. R.S. 51:1405(A), we do not believe the legislature intends, by its inclusion of language in a particular statute that a violation thereof constitutes an unfair trade practice, to mean that violations of statutes without such language can never constitute an unfair trade practice. Rather, we believe this merely indicates the legislature's desire to remove from the discretion of the trial court, with respect to a particular statutory violation, whether the violation of that statute is an unfair trade practice. In the instant case, it is up to the trial court to determine (1) whether Capitol House's allegations as to the defendants' misrepresentations are true, (2) whether the misrepresentations constitute violations of the Louisiana Riverboat Economic Development and Gaming Control Act, (3) whether defendants failed to disclose these violations in contravention of their duty to disclose under La. R.S. 27:70(C), (4) whether the violation of La. R.S. 27:70(C) in this fashion offends public policy and is immoral, unethical, oppressive, or unscrupulous or involves fraud, misrepresentation, deception, breach of fiduciary duty, or other unethical conduct such that it constitutes an "unfair method of competition" or an "unfair or deceptive act or practice" in violation of La. R.S. 51:1405(A), and, if so, (5) whether this unfair trade practice caused Capitol House an "ascertainable loss" such that it is entitled to recover damages under La. R.S. 51:1409(A).[10]
Defendants also argue in passing Capitol House is not its "competitor" and therefore cannot bring an unfair trade practice action against it. This argument is in the nature of an exception of no right of action which has not been ruled on by the trial court. However, under the provisions of La. C.C.P. art. 927(B), the appellate court may notice on its own motion a failure to state a right of action. In the interest of judicial efficiency, we note La. R.S. 51:1509(A) grants a right of action to "[a]ny person [natural or juridical] who suffers any ascertainable loss of money or movable property... as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by R.S. 51:1405...." Although business consumers and competitors are included in the group afforded this private right of action, Louisiana courts have repeatedly held they are not its exclusive members. Jarrell v. Carter, 577 So.2d 120, 123 (La.App. 1 Cir. 1991), writ denied, 582 So.2d 1311 (La.1991). See also Monroe Medical Clinic, Inc. v. Hospital Corporation of America, 622 So.2d 760, 763 (La.App. 2 Cir.1993), writ denied, 629 So.2d 1135 (La.1993); Belle Pass Terminal, Inc. v. Jolin, Inc., 618 So.2d 1076, 1081 (La.App. 1 Cir.1993), writ denied, 626 So.2d 1172 (La.1993); Roustabouts, Inc. v. Hamer, 447 So.2d 543, 548 (La.App. 1 Cir.1984); Lilawanti Enterprises, Inc. v. Walden Book Company, Inc., 95-2048 (La.App. 4 Cir. 2/29/96), 670 So.2d 558, 561 ("Any person who suffers damage as a result of an unfair or deceptive act or practice which is unlawful under § 1405 has a private cause of action.").[11] If a plaintiff alleges facts sufficient to classify himself as a member of the group provided a remedy by La. R.S. 51:1409(A), it is of no moment if plaintiff is not a consumer or a business competitor of defendant. Jarrell, 577 So.2d at 124.

*531 DECREE
For the foregoing reasons, the writ of certiorari is DENIED, and the trial court's judgment denying defendants' exceptions of prescription/peremption is AFFIRMED. Costs associated with this writ are assessed to defendants.
NOTES
[1] This court has twice previously recognized Capitol House Preservation Company to be the successor in interest of Lady Luck Baton Rouge Casino, Inc. See Lambert v. Riverboat Gaming Enforcement Division, 96-1856, (La.App. 1 Cir. 12/29/97), 706 So.2d 172, 174, writ denied, 98-0297 (La.3/20/98), 715 So.2d 1221; State, through the Louisiana Riverboat Gaming Commission v. Louisiana State Police Riverboat Gaming Enforcement Division, 95-2355, (La.App. 1 Cir. 8/21/96), 694 So.2d 316, 317.
[2] "CPA Accounting Firm," alleged to be the certified public accountant for Jazz Enterprises, Inc., and "XYZ Insurance Company," alleged to be CPA Accounting Firm's professional liability insurer, were also named as defendants.
[3] "XYZ Insurance Company" and "TUV Insurance Company," alleged to be the professional liability insurer and general liability insurer of Perryman Consultants, Inc. and M. Ray Perryman, were also added as defendants.
[4] See also 28 U.S.C. § 1367(d) which provides: "The period of limitations for any claim asserted under subsection (a) ... shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."
[5] In Paragraph 220 of its supplemental petition, Capitol House alleged:

The Riverboat Act creates a duty on the part of all persons and entities that are licensed to inform the Division of any action which they believe would constitute a violation or possible violation of the Riverboat Act. La. R.S. 4:530(C).... [Defendants] violated their continuing duty to disclose the fraudulent and misleading material information submitted to the Division by the joint applicant Jazz/Catfish Queen upon its discovery pursuant to La. R.S. 4:530(C). Defendants continue to violate La. R.S. 4:530(C).
[6] "Division" is defined by La. R.S. 27:44(6) as "the riverboat gaming enforcement division of the gaming enforcement section of the office of state police, public safety services, Department of Public Safety and Corrections."
[7] Pursuant to 1996 La. Acts, 1st Ex.Sess., No. 7, § 3 and the statutory revision authority of the Louisiana State Law Institute., former La. R.S. 4:530, 4:536 and 4:558 were redesignated as La. R.S. 27:70, 27:76 and 27:99, respectively.
[8] Given the language and intent of La. R.S. 27:70(C), we see no reason, and defendants suggest none, to exclude from the scope of the "person's" duty to disclose that person's own violations of the riverboat gaming and license laws. The import of this unique statutory duty is paramount. The legislature obviously had great concern about the integrity of the licensing process. As such, the legislature placed dual duties on the applicants and licensees, first a duty to be honest and complete in the initial representations, and second, a continuing duty to disclose any dishonest or fraudulent misrepresentation which continues until the disclosure.
[9] Capitol House's petition claims that the misrepresentations themselves are unfair trade practices and that the failure to disclose the misrepresentations in violation of La. R.S. 27:70(C) is also an unfair trade practice. The alleged acts of misrepresentation by defendants occurred more than one year prior to the filing of the suit in federal court. Because we find the petition alleges defendants' failure to disclose the misrepresentations is an unfair trade practice, because this failure to disclose occurred each day during the year before the suit was filed [and, presumably, continues to occur], and because this claim is therefore not perempted, it is not necessary for us to determine the issue of peremption relative to Capitol House's claim that the acts of misrepresentation themselves are unfair trade practices. Any ruling thereon would be unnecessary dictum insofar as the harm done to Capitol House by any such alleged misrepresentations is the same as the harm done to it by virtue of defendants' alleged failure to disclose the misrepresentations.
[10] This opinion does not in any way intimate whether or not Capitol House will be able to prevail on the merits and only addresses whether its unfair trade practice claim is perempted. For Capitol House to win on the merits, it will have to show it suffered an ascertainable loss as a result of the alleged unfair trade practices of the defendants. In the context of the instant case, this would require Capitol House to prove that had defendants disclosed the alleged misrepresentations on July 18, 1994 or thereafter, Capitol House would have been awarded the riverboat gaming license which determination involves consideration of whether Capitol House meets the requisite statutory criteria, in particular La. R.S. 27:70 and La. R.S. 27:76.
[11] Federal jurisprudence has indicated otherwise. See Gardes Directional Drilling v. U.S. Turnkey Exploration Company, 98 F.3d 860 (5th Cir.1996) and Hamilton v. Business Partners, Inc., 938 F.Supp. 370 (E.D.La.1996).