889 So.2d 304 (2004)
CAPITOL HOUSE PRESERVATION COMPANY, L.L.C.
v.
PERRYMAN CONSULTANTS, INCORPORATED; Mr. M. Ray Perryman, XYZ Insurance Company and TUV Insurance Company.
No. 2003 CA 1983.
Court of Appeal of Louisiana, First Circuit.
November 3, 2004.
Rehearing Denied December 10, 2004.
*305 Charles S. Lambert, Jr., Baton Rouge, for Appellant Plaintiff Capitol House Preservation Company, L.L.C.
John Michael Parker, Marc S. Whitfield, Baton Rouge, for Appellees Defendants Argosy Gaming Company, Argosy of Louisiana, Inc., Catfish Queen Partnership, In Commendam, Jazz Enterprises, Inc.
Phillip W. Preis, Charles M. Gordon, Jr., Baton Rouge, for Appellees Defendants Steve Urie, Lodging Systems, Inc.
Claude F. Reynaud, Jeanne C. Comeaux, Baton Rouge, for Appellees Defendants Ronald Johnson, Mark Bradley, Paula Bradley.
Panel composed of Judges FRANK FOIL, RANDOLPH H. PARRO and JAMES E. KUHN.
FOIL, J.
This appeal challenges the trial court's granting of the defendants' exception of res judicata. We affirm.

BACKGROUND
In 1993, three applicants, Lady Luck Baton Rouge Casino, Inc., Jazz Enterprises, Inc., and Louisiana Casino Cruises, Inc. were vying for two riverboat gaming licenses *306 to be awarded in East Baton Rouge Parish. Jazz and Argosy Gaming Company entered into an agreement to submit a joint application for the license as the Catfish Queen Partnership.
Perryman Consultants, Inc. was hired to rank the applicants according to which was the best qualified. It ranked Jazz/Catfish Queen first, Louisiana Casino Cruises second, and Lady Luck third. On July 18, 1994, after conducting hearings, the Gaming Enforcement Division of the Louisiana State Police (Division) awarded licenses to Jazz/Catfish Queen and Louisiana Casino Cruises, and denied Lady Luck's license application. Supplemental reasons for the permit denial were subsequently issued by the Division.
Lady Luck did not appeal the Division's denial of its permit. Instead, on July 10, 1995, Capitol House Preservation Company, L.L.C., as the successor in interest to Lady Luck, filed the instant lawsuit in the 19th Judicial District Court against Perryman Consultants, alleging that Perryman was guilty of numerous errors and omissions in its ranking of the applicants. Capitol House amended its petition to name as defendants Jazz Enterprises, Inc., Catfish Queen Partnership in Commendam, Argosy Gaming Company, Argosy of Louisiana, Inc., and shareholders and principals of the entities, including Steve Urie, Lodging Systems, Inc., Ronald Johnson, Mark Bradley and Paula Bradley (sometimes referred to herein collectively as "Jazz" or as the "Jazz defendants"). Capitol House asserted claims of negligence and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law (UTPL), La. R.S. 51:1401-1419. Specifically, Capitol House claimed that Jazz and its principals made false and misleading statements to persons involved in the selection process regarding the true ownership of Jazz and Jazz's ability to finance and complete various landside improvements promised by Jazz to enhance its competitive position. Capitol House averred that Jazz's material misrepresentations to the Division violated the Riverboat Gaming Act and disqualified Jazz from consideration for a license. It further alleged that the support of the City of Baton Rouge for the Jazz project, the issuance of a certificate by the Louisiana Riverboat Gaming Commission (Commission), the erroneous rankings of the Perryman Evaluation, and the improper decision of the Division to issue a license to Jazz and deny Capitol House's application were all based on Jazz's fraudulent and deceptive practices and representations. As a result of these representations, Capitol House urged, Jazz obtained an unfair and undue competitive advantage. It sought to recover the loss of its investments spent in pursuit of the license, the value of a gaming license, lost profits, future lost profits of its business and riverboat project, as well as attorney's fees and costs.
The defendants filed exceptions of prescription/peremption, asserting that Capitol House's claims were time barred. The trial judge denied the exceptions as to some of the defendants and granted them as to others. The judge's overruling of the exceptions spawned supervisory review of the ruling by this court in Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc., 98-1514 (La.App. 1 Cir. 12/10/98), 725 So.2d 523, writ denied, 99-0548 (La.4/9/99), 740 So.2d 637 (Capitol House I). In Capitol House I, this court upheld the trial court's denial of the prescription exception as to the individual defendants, finding that the Louisiana Riverboat Economic Development and Gaming Control Act imposed a continuing duty to report violations of the act, and each day the defendants, as licensees or applicants, failed to disclose the alleged misrepresentations, a new violation of the statutory *307 duty arose and could constitute an unfair trade practice should the court so find. In Capitol House Preservation Company, L.L.C. v. Perryman Consultants, Inc., 98-2216 (La.App. 1 Cir. 11/5/99), 745 So.2d 1194, writ denied, 99-3446 (La.2/11/00), 754 So.2d 937, the second appeal, this court reversed the granting of the prescription exceptions, applying the continuing tort principle to find that the claims were not time barred against the remaining defendants.
Thereafter, the defendants filed exceptions of lack of subject matter jurisdiction, asserting that the trial court could not award damages to Capitol House because it lacked original jurisdiction and authority to review the alleged misconduct and determine whether applicants should have been awarded a riverboat license. The defendants also filed exceptions of no cause of action, urging that even if the trial court had jurisdiction over the case, Capitol House was precluded from contesting the Division's decision because Capitol House failed to exhaust administrative remedies provided for in the gaming law with respect to the denial of its license application. The trial court denied the exceptions. In Capitol House Preservation Co., L.L.C. v. Perryman Consultants, Inc., 01-2524 (La.App. 1 Cir. 12/31/02), 836 So.2d 680, writs denied, 03-0323, 0324 (La.4/21/03), 841 So.2d 794, 795, this court upheld the denial of the exceptions. In finding the subject matter jurisdiction exception had been properly overruled, this court observed that the allegations of Capitol House's petition asserted a civil claim for monetary damages arising from the alleged misconduct of defendants. As no gaming agency had been granted the authority to award money damages, this court stated, the case fell within the adjudicative sphere of the trial court. With respect to the no cause of action exception, this court noted that the exhaustion doctrine applies only when exclusive jurisdiction exists in an administrative agency, and concluded that the doctrine simply did not apply to Capitol House's claims for monetary damages.
In Capitol House III, two of the defendants filed a peremptory exception of res judicata for the first time in this court, relying on documentation attached to their brief and never made part of the record. Because the proof of the ground of the exception did not appear in the record, this court was compelled to deny the exception.
Following this court's remand, all of the defendants filed exceptions of res judicata, asserting that all of Capitol House's claims were barred because they had been previously litigated and determined by the Division during the licensing process. They submitted that because Capitol House failed to appeal the Division's rulings, those rulings were now final and definitive, and could not be collaterally attacked in court.
In support of their assertion that all of Capitol House's claims of misconduct on Jazz's part were raised before the Division and were investigated fully and adjudicated by that body, the defendants introduced extensive documentation, including complaints lodged with the Division by Capitol House's predecessor, Lady Luck, the Division's final order, its reasons for ruling and the transcripts of the hearings held before the Division. These documents reflect that early on in the application process, Lady Luck attacked Jazz's ability to live up to its financial commitments to the projects if it got the license. On May 16, 1994, Lady Luck's project developer wrote a letter to Lieutenant Marcal Poullard, the Supervisor of the Commission, asserting numerous alleged violations of the Riverboat Gaming Act by Jazz, which Lady *308 Luck insisted rendered Jazz unsuitable and disqualified to receive a license. Specifically, it alleged that Jazz violated the law throughout the application process by submitting untrue statements and willfully omitting material facts in its application for preliminary approval filed with the Commission. It asserted that Jazz was guilty of (1) failing to disclose financing provided to Jazz by Steve Urie; (2) failing to disclose Steve Urie's ownership interest in Jazz; (3) misrepresenting a financial commitment from a casino development financier; (4) intending to sell its rights in the preliminary approval to the highest bidder; (5) failing to notify the Commission and the City of Baton Rouge of the withdrawal of Jazz's project operator; and (6) misrepresenting its financial ability to secure the necessary funding to fulfill promises made should it be awarded the licensing, including a commitment to construct a 400-room convention size hotel.
Hearings were held before the Division on July 7, 8 and 11, 1994. Each applicant was allowed time to make a presentation to the Division addressing all aspects of the applicant's qualifications to receive a license, the Division was afforded the opportunity to question the applicants, and each applicant was allowed to present evidence on the last day to rebut the findings in the Perryman report. On July 7, Lady Luck presented its evidence in support of its application to the Division, as did Jazz the following day. At the hearing on Jazz's application, Senior Trooper Kelly Garrison, the investigating agent on the application, testified. He noted that he and another officer investigated and verified Jazz's application, uncovering no discrepancies in the information provided. The officer also observed that during the course of the project, after Jazz was issued a preliminary approval, Lady Luck filed complaints about Jazz with the Commission, the Attorney General's office, the media and the Division. He stated that each of Lady Luck's allegations were reviewed and each charge was examined during an exhaustive investigation performed by the officers. Officer Garrison continued:
Careful review of all the documents and depositions in the investigation of the allegations by Capitol House Preservation Company do not produce sufficient evidence to support their claims. Jazz does not seem to have made any intentional misrepresentations or false statements. They appear to have acted in good faith and in the spirit of the law. From the initial application to the Division to the present, Jazz and Argosy officials have acted responsibly and have assisted the case agents in acquiring the necessary documents in a timely fashion without question.
The license was awarded to Jazz, and denied to Lady Luck, on July 18, 1994. In reasons for ruling and supplemental reasons for ruling, the Division determined that Lady Luck ranked third among the three applicants regarding its qualifications due to concerns about its financing, docking facility, and lack of necessary permits to conduct operations along the Mississippi River, and the resulting delay in the commencement of operations because of these concerns. The Division stated that it was giving Dr. Perryman's evaluation of the economic impact of each of the three applicants more weight than the testimony and reports submitted by Lady Luck's economist, noting that the ranking therein was consistent with the Division's ranking of the applicants.
The Division found that Jazz met the suitability requirements contained in the Riverboat Gaming Act, stating that there were no discrepancies that would disqualify Jazz, and that Jazz had the requisite gaming experience, necessary financing *309 and had secured a designated docking facility. The Division later found Lady Luck was also a suitable applicant, however, it stressed that Lady Luck ranked third in terms of qualifications and was therefore denied a license.
The trial judge, considering the evidence submitted in favor of and against the res judicata exception, found that all of the issues raised in this lawsuit were raised before the Division. The judge relied primarily on the May 16, 1994 letter from Lady Luck to the supervisor of the Commission. These allegations, the judge stated, were investigated and, after holding hearings in connection with each of the three applications for the licenses, the Division made a determination that Jazz did not violate any of the regulations or statutes raised in the May 16, 1994 letter. Once the Division made a determination awarding the license to Jazz and denying it to Lady Luck, the judge concluded, Lady Luck could have appealed the decision to the Commission and then to the courts. Rather than avail itself of the appellate review procedures provided for in the gaming law and the Administrative Procedures Act (APA), the judge stated, Capitol House chose to collaterally attack the Division's rulings with the present lawsuit for damages. The judge observed that in order to prevail on its tort claim, Capitol House would have to demonstrate that Jazz acted inappropriately in the submission of its application for a license, requiring relitigation of those issues raised at the Division level including: (1) the Division's dismissal of Capitol House's allegations of violations of the Riverboat Gaming Act; (2) the Division's determination that Jazz was in fact a suitable applicant, and (3) the Division's decision to award the license to Jazz.
Capitol House appealed the judgments granting the exceptions of res judicata as to the various Jazz defendants, and the appeal was docketed in the court as 2003CA1983. An appeal from the judgment granting the exception of res judicata in favor of the Perryman defendants was docketed as 2003CA1984, also handed down this day.

RES JUDICATA
Res judicata is an issue and claim preclusion device, designed to promote judicial efficiency and the final resolution of disputes by preventing needless relitigation. Mandalay Oil & Gas, L.L.C. v. Energy Development Corp., 01-0993 (La.App. 1 Cir. 8/4/04), 880 So.2d 129, 135. Under La. R.S. 13:4231, the phrase "res judicata" embraces both claim preclusion and issue preclusion. Under claim preclusion (res judicata), the effect of a final judgment on the merits precludes the parties from litigating matters that were or could have been raised in that action. Under issue preclusion, or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, res judicata has two different aspects: (1) foreclosure of relitigating matters that have never been litigated, but should have been advanced in an earlier suit, and (2) foreclosure of relitigating matters that have been previously litigated and decided. Id.
By Acts 1991, No. 753, Section 1, the Louisiana legislature enacted the Louisiana Riverboat Economic Development and Gaming Control Act, La. R.S. 4:501 et seq., setting forth a comprehensive scheme for the licensing process for riverboat operators seeking to conduct gaming activities on riverboats in Louisiana. State, Department of Public Safety and Corrections, Office of State Police, Riverboat Gaming Division v. Louisiana Riverboat *310 Gaming Commission and Horseshoe Entertainment, 94-1872, 1914 (La.5/22/95), 655 So.2d 292, 296. Prior to its amendment in 1996, the Riverboat Gaming Act created the Division as a separate and distinct entity, vesting it with vast regulatory and enforcement powers to carry out its provisions. The Division was given the responsibility to investigate an applicant's qualifications, to issue, deny, condition or restrict licenses and permits; to investigate violations of the Riverboat Gaming Act; to conduct hearings, and to request information, materials or other data from licensees or permittees. La. R.S. 4:515; 517-521; 4:525; 4:530-535. The Riverboat Gaming Act vested the Commission with the power to hear and determine all appeals relative to the granting, suspension, revocation, conditions or renewal of all licenses, permits and applications. La. R.S. 4:511(1).[1]
Capitol House argues that a court should give no effect to the final rulings of the administrative tribunal vested with broad investigatory and adjudicative powers in the licensing scheme, positing that numerous requirements for the application of res judicata are absent in this case. It contends that five elements must be met before preclusive effect can be given to the Division's rulings: (1) a valid judgment; (2) a final judgment; (3) the same parties; (4) the same cause of action asserted in the second suit existed at the time of the final judgment in the first litigation, and (5) the cause or action asserted in the second suit must arise out of the transaction or occurrence that was the subject matter of the first litigation. See Burguieres v. Poilingue, 02-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. Capitol House urges that the first element cannot be met because the Division lacked authority to rule on its unfair trade practice and tort claims. It submits that the fourth element cannot be established because the tort sued upon in this case did not exist at the time the Division found Jazz suitable. Capitol House relies on the "continuing tort theory," asserting that Jazz's failure to disclose violations of the Riverboat Gaming Act constitutes a new violation each day following the Division's issuance of the license to Jazz. Further, it submits, the Division could not fully adjudicate Capitol House's claim with respect to Jazz's false representation that it would construct landside improvements because Jazz did not cease construction on the proposed projects until over four months after the Division rendered its decision. Capitol House also argues that the "identity of parties" element is lacking because it was not a party to the Division's determination regarding Jazz's suitability.[2] Capitol House's last main argument is that the trial court erred in giving preclusive effect to the ruling of an administrative body, citing several cases where courts have declined to do so.
*311 The central flaw in Capitol House's argument is that this case does not fall under traditional res judicata analysis; rather, the facts of this case bring it within the collateral estoppel realm. Collateral estoppel focuses a court's attention to the issues raised in the first and subsequent proceedings, and requires a court to determine whether those issues were fully adjudicated in the prior proceeding, not whether the causes of action are the same in the proceedings.
In the subsequent court proceeding, Capitol House principally asserts that Jazz misrepresented its true ownership and its ability to finance and complete landside improvements, including a 400 room hotel, in order to secure a competitive advantage in obtaining a license. In the first administrative proceeding, these claims were asserted before the Division by Capitol House in the May 16, 1994 letter, and were investigated and rejected by the Division. Thus, the Division found that Jazz was not guilty of the alleged misrepresentations. Capitol House could have appealed the Division's ruling and could have asserted that the Division erred in not disqualifying Jazz from the applicant pool because of the alleged misrepresentations. It did not do so, and chose instead to file a suit directly against the successful applicant. However, because Capitol House did not appeal the administrative ruling through the proper channels, the Division's decision that Jazz was not guilty of the charges of misrepresentation levied against it by Capitol House became final and acquired the status of a thing adjudged. See Save Our Wetlands, Inc. v. Department of Environmental Quality, 00-2809 (La.App. 1 Cir. 2/15/02), 812 So.2d 746, writ denied, 02-1230 (La.8/30/02), 823 So.2d 953 (stating that where the time fixed for appealing has elapsed, an administrative ruling becomes res judicata).
Our analysis of the record convinces us that the issues raised in the two proceedings are the same, those issues were fully determined in an adjudicative context, and this suit will require the trial court to relitigate final determinations of those issues made by an entity vested with vast authority over matters pertaining to riverboat licenses. Accordingly, we conclude that all of the elements for applying collateral estoppel are met in this case, and the trial judge correctly granted the exceptions of res judicata.

CONCLUSION
For the foregoing reasons, the judgments sustaining the defendants exceptions of res judicata are affirmed. All costs of this appeal are assessed to appellant.
AFFIRMED.
KUHN, J., concurs.
PARRO, J., dissents and assigns reasons.
PARRO, J., dissenting.
I disagree with the majority in this case for a number of reasons, but will focus my comments on just two areas.
First, although some of the issues in this lawsuit were raised at the licensing hearing before the Division, they were not litigated there. There was no opportunity for discovery, no filing of motions or exceptions, no cross-examination of witnesses for one party by representatives of another party, nor any of the other procedural aspects of a trial. Nor could there have been, as this court has previously held that at least some of the claims were in the nature of a continuing tort and, since no gaming agency was granted the authority to award money damages, those claims *312 were beyond the jurisdiction of any such agency.
Second, even though LSA-R.S. 13:4231 now includes collateral estoppel, relitigation of the same issue is only precluded when the previous action was between the same parties. That aspect of res judicata has not changed. The licensing hearings were between each separate applicant and the Division, not between one applicant and another. Therefore, the licensing process and decision cannot be res judicata as to the issues raised between these parties in this case.
Accordingly, I respectfully dissent.
NOTES
[1] In 1996, the legislature abolished the Riverboat Gaming Commission and transferred all of its powers, duties and responsibilities to the Louisiana Gaming Control Board. La. Acts 1996, No. 7.
[2] In support of its claim that the res judicata elements are lacking in this case, Capitol House places significant emphasis on this court's statements in Capitol House III regarding the nature of the remedy sought. This court was asked to decide whether the case should be dismissed because Capitol House failed to exhaust administrative remedies. In that context, the nature of the relief being sought was the determinative factor. This court held that because the administrative tribunal lacked authority to award monetary damages, the relief sought by Capitol House, the case was not subject to dismissal on that basis. However, the exception under consideration in this fourth dispute forces this court to look at the issues raised in the earlier and later proceedings, and those pronouncements have no relevance to the issues presented in the context of the res judicata exception.